IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-04-025 |
| | § | |
| JEFFERY K. SKILLING and | § | |
| KENNETH L. LAY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the United States' Motion for Leave to Cross-Examine Defendant Lay Concerning Valhalla (Docket Entry No. 900). For the reasons explained below, the motion will be denied.

**I.   Introduction**

Citing Federal Rule of Evidence 608, the government moves the court to allow cross-examination of defendant Lay on his role in the "Valhalla" incident. Asserting that Lay's testimony during direct examination has made his credibility and truthfulness an issue, and that evidence of the Valhalla incident shows that "Lay had knowingly acquiesced in ignoring a fraud directed at Enron and had lied to Enron's employees about the fraud,"[1] the government

---

[1] United States' Motion for Leave to Cross-Examine Defendant Lay Concerning Valhalla (United States' Motion to Cross-Examine), Docket Entry No. 900, p. 2.

argues that it should be allowed to cross-examine Lay about his conduct during the Valhalla incident because that conduct is highly probative of his credibility and truthfulness.[2]  Citing Federal Rule of Evidence 403, Lay argues that the government should not be allowed to cross-examine him about Valhalla because the events at issue occurred over 18 years ago, the evidence surrounding those events do not establish that he engaged in any wrongdoing, and

> [i]nquiry into 'Valhalla' will inevitably lead to a mini-trial and substantially protract the length of these proceedings.  Furthermore, placing a citizen accused in the position of defending and litigating uncharged and unproven conduct of this vintage is simply unfair and, therefore, well within the Court's discretion to exclude.[3]

## II.  **Analysis**

**A.  Applicable Law**

Federal Rule of Evidence 608(b) provides in pertinent part:

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . .

The Fifth Circuit has explained that under Rule 608(b), "at the discretion of the trial court . . . prior conduct may be

---

[2] Id. at p. 1.

[3] Defendant Lay's Reply to United States' Motion for Leave to Cross-Examine Defendant Lay Concerning Valhalla (Lay's Response), p. 2.

inquired into on cross-examination of a witness if the evidence tends to test the truthfulness of testimony given on direct examination."  United States v. Riggio, 70 F.3d 336, 339 (5th Cir.), cert. denied, 116 S.Ct. 1366 (1995).  See also Bufford v. Rowan Companies, Inc., 994 F.2d 155, 159-160 (5th Cir. 1993) (Rule 608(b) "forbids the use of extrinsic evidence of a specific instance of conduct to attack a witness's character for truthfulness.  It does not bar, however, extrinsic evidence offered to contradict a witness's testimony about a material issue in the case.").  Although Rule 608(b) "clearly applies to evidence introduced to impeach the testimony of a witness," id., "a prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable." United States v. Tomblin, 46 F.3d 1369, 1388-1389 (5th Cir. 1995) (citing United States v. Silverstein, 737 F.2d 864, 868 (10th Cir. 1984)).  Instead, "Rule 608 authorizes inquiry only into instances of misconduct that are 'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement.'"  Id. (quoting United States v. Leake, 642 F.2d 715, 718 (4th Cir. 1981)).  See also  United States v. Waldrip, 981 F.2d 799, 803 (5th Cir. 1993) (applying Leake standard to forgery evidence).

Rule 403 allows the trial court to exclude probative evidence offered under Rule 608 "if the prejudicial effect substantially

outweighs the probative value." <u>United States v. Sanders</u>, 343 F.3d 511, 518-519 (5th Cir. 2003). Rule 403 provides that

> relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

"'Unfair prejudice' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." <u>Old Chief v. United States</u>, 117 S.Ct. 644, 650 (1997).

**B.   Valhalla Incident**

The government describes the Valhalla incident as follows:

Lay learned in February 1987 that two executives at Enron Oil Corporation (based in Valhalla, New York) had defrauded the company by, among other things, shifting profits through the creation of fictitious losses, opening an off-the-books account by means of a "fraudulent banking transaction," paying an unauthorized $250,000 bonus to an Enron Oil employee, depositing the proceeds of the sale of executive's company car into one of the executive's personal bank account, fraudulently diverting more than $5 million of Enron's money as part of the scheme, and presenting falsified bank account records to Lay. Although Lay knew of this fraudulent activity, he declined to fire the two executives because they "made too much money to be fired." When, later in 1987, the executives' conduct resulted in hundreds of millions of dollars in losses to Enron and was revealed to the public, Lay lied to Enron employees at an all-employee meeting about when he learned of the fraud and the extent of his knowledge of the fraud. In a later memorandum to Enron employees, Lay misleadingly portrayed management as stymied in its desire to prevent fraud and wrote, "if there is a lesson to be learned . . . everyone . . . must abide by the company's policies, procedures and controls and if anyone <u>suspects</u> that this is not being done, he or she must report it immediately before

-4-

any damage is done."  *See* Exhibit 4 to Government's Rule 404(b) Notice.[4]

**C.   Application of Law to Facts**

For the reasons explained below the court concludes that the government's motion to cross-examine Lay about Valhalla should be denied under Rule 608 because the government's Valhalla allegations neither contradict his direct testimony on a material issue, nor constitute instances of misconduct by Lay that are "'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement.'"  Tomblin, 46 F.3d at 1389.  The court also concludes that the government's motion to cross-examine Lay about Valhalla should be denied under Rule 403 because any minimal probative value of the Valhalla evidence is substantially outweighed by the danger of unfair prejudice.

   1.   Rule 608(b)

The government argues that Lay opened the door to cross-examination about Valhalla because that incident directly contradicts three separate statements that he made during his direct examination.

      (a)  "Never Hesitates to Jump In"

The government argues that it should be allowed to cross-examine Lay about Valhalla because

---

[4]United States' Motion to Cross-Examine, pp. 2-3.

Lay testified on direct that although he is "more of a delegator," he "never hesitate[s] to jump in if [he] feels like something is going wrong or something is not being done right."  4/24/06 Tr. 14562 (excerpts of Lay's direct testimony are attached as Exhibit C).  The Valhalla evidence directly contradicts this statement by showing that Lay did not "jump in" when he learned that something was "going wrong."[5]

The governments' description of Valhalla is that Enron executives engaged in fraud and that "[a]lthough Lay knew of this fraudulent activity, he declined to fire the two executives because they 'made too much money to be fired.'"[6]  The court is not persuaded that the government's allegations about Valhalla contradict Lay's testimony that although he is "more of a delegator," he "never hesitate[s] to jump in if [he] feels like something is going wrong or something is not being done right."[7]  The government alleges that Lay declined to fire the two executives, it does not allege that firing the two executives was the only way that Lay could have "jumped in" to the situation, or that Lay failed to "jump in" and take other action, e.g., to stop the fraud, to guard against its reoccurrence, or to discipline the two executives.  Moreover, the government's argument that the Valhalla evidence shows that "Lay did not 'jump in' when he learned

---

[5] Id. at p. 4 (citing Excerpts from Lay's direct testimony attached thereto as Exhibit C, 4/24/06 Tr. 14,562).

[6] Id. at p. 2.

[7] Id. at p. 4 (citing Excerpts from Lay's direct testimony attached thereto as Exhibit C, 4/24/06 Tr. 14,562).

that something was 'going wrong,'"[8] does not demonstrate that Lay engaged in acts of misconduct that are "'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement.'"  Tomblin, 46 F.3d at 1389. Accordingly, the court concludes that Lay's testimony that "although he is 'more of a delegator,' he 'never hesitate[s] to jump in if [he] feels like something is going wrong or something is not being done right,'"[9] did not open the door to cross-examination about Valhalla.

       (b)  "Live by All the Rules"

The government argues that it should be allowed to cross-examine Lay about Valhalla because

> Lay testified that "I've always tried to live by all the rules and all of the laws and certainly have done — take a strong — a lot of effort to make sure that happens." 4/24/06 Tr. 14562.  As in Riggio, the government should be allowed to impeach this testimony with evidence that he ignores the rules when it is in his or Enron's interest to do so.[10]

Lay's testimony and the Valhalla allegations are distinguishable from the testimony and the extrinsic evidence at issue in Riggio.

In Riggio the defendant was indicted, inter alia, for conspiracy to commit arson.  On direct examination the defendant

---

[8] Id.

[9] Id.

[10] Id.

testified, "I've never burned anything down in my life," and "I've never been involved in criminal activity." 70 F.3d at 339. During cross-examination the prosecutor questioned him about four separate fires for which no charges had been made. Since evidence of the four fires was introduced to rebut the defendant's direct testimony, and since that evidence was highly probative of the conspiracy to commit arson offense with which the defendant was charged, the Fifth Circuit held that the district court's decision to allow cross-examination about the four fires as impeachment evidence was neither erroneous nor an abuse of discretion. Id.

Unlike Riggio, who testified that he had never been involved in criminal activity, Lay testified only that he has "always tried to live by all the rules and all the laws." He did not testify that he has always succeeded, or that he has never broken any law or rule. Moreover, the government's allegation that

> [w]hen, later in 1987, the executives' conduct resulted in hundreds of millions of dollars in losses to Enron and was revealed to the public, Lay lied to Enron employees at an all-employee meeting about when he learned of the fraud and the extent of his knowledge of the fraud,[11]

neither contradicts his direct testimony that he has "always tried to live by all the rules and all the laws" nor shows that Lay engaged in acts of misconduct that are "'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement.'" Tomblin, 46 F.3d at 1389. Accordingly, the court concludes that Lay's testimony that he has

---

[11] Id. at p. 2.

"always tried to live by all the rules and all of the laws and certainly have done — take a strong — a lot of effort to make sure that happens,"[12] did not open the door to cross-examination about Valhalla.

      (c)  "Not the Kind of Conduct that We Will Tolerate"

The government argues that it should be allowed to cross-examine Lay about Valhalla because

> Lay testified that in an answer given during the August 14 all-employee meeting he was trying to communicate that management integrity is "not the kind of conduct that we will tolerate." 4/24/06 Tr. 14645. Again, the Valhalla evidence directly impeaches the truthfulness of this statement by showing that in the past Lay tolerated not only bad management but out-and-out fraud.[13]

For the reasons explained above in § II.C.1(a), the court is not persuaded that the government's allegations about Valhalla contradict Lay's testimony that he would not tolerate lapses in managerial integrity. Accordingly, the court concludes that Lay's testimony that lapses in managerial integrity were "not the kind of conduct that we will tolerate" did not open the door to cross-examination about Valhalla.

    2.  <u>Rule 403</u>

As described by the government, the Valhalla incident transpired over 18 years ago, the fraud involved was not committed

---

[12] <u>Id.</u> at p. 4.

[13] <u>Id.</u>

-9-

by Lay, but by two executives whom Lay declined to fire, and when fraud-related losses became public Lay lied to Enron employees regarding how much he knew about the fraud and when he knew it.  In this case the government alleges that Lay personally conspired with others and personally committed various types of fraud.  The government's allegations about Lay's Valhalla conduct are not factually similar to the charges leveled against Lay in this case.

Since some of the charges leveled against Lay in this case are based on allegations that he lied to employees about how much he knew about Enron's deteriorating financial condition and when he knew it, the  court is persuaded that the government's Valhalla allegations that Lay lied to employees about how much he knew about the Valhalla fraud and when he knew it pose a substantial risk of confusing the issues and misleading the jury into deciding guilt on a ground different from proof of the specific offenses charged.

The court is also persuaded that presentation of the Valhalla evidence will inevitably lead to a mini-trial on extraneous issues that will unduly protract these already protracted proceedings. For these reasons the court concludes that the government's motion to cross-examine Lay on the Valhalla incident should also be denied under Rule 403 because the evidence is only marginally relevant, and its probative value is substantially outweighed by the danger of  unfair  prejudice  resulting  from  confusion  of  the  issues,

misleading the jury, and unduly delaying the trial with the needless presentation of cumulative evidence.

### III. Conclusions and Order

For the reasons explained above, the United States' Motion for Leave to Cross-Examine Defendant Lay Concerning Valhalla (Docket Entry No. 900) is **DENIED**.

**SIGNED** at Houston, Texas, on this 28th day of April, 2006.

                                    SIM LAKE
                       UNITED STATES DISTRICT JUDGE